FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 06, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHANIE W. O/B/O JONATHAN W.,<br><br>     Plaintiff,<br><br> vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>     Defendant. | No. 2:18-cv-00052-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

   Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the
Commissioner must find that the claimant is not disabled.  20 C.F.R. §§
404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two.  At this step, the Commissioner considers the severity of the
claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the
claimant suffers from "any impairment or combination of impairments which
significantly limits [his or her] physical or mental ability to do basic work
activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),
416.920(c).  If the claimant's impairment does not satisfy this severity threshold,
however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.
§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more
severe than one of the enumerated impairments, the Commissioner must find the
claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 31, 2014, Plaintiff[1] filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging on onset date of March 31, 2014. Tr. 1119-38. The applications were denied initially, Tr. 1062-66, and on reconsideration, Tr. 1068-71. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 22, 2016. Tr. 959-1013. On October 18, 2016, the ALJ denied Plaintiff's claims. Tr. 51-77.

---

[1] The claimant died on May 12, 2017. ECF No. 15 at 8. This opinion will refer to the claimant as Plaintiff.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 31, 2014, the alleged onset date. Tr. 57. At step two, the ALJ found Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease, left shoulder acromioclavicular joint osteoarthrosis, osteoarthritis of the bilateral hands, IBS, bilateral carpal tunnel and ulnar neuropathy, COPD, and GERD. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 61. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] is able to walk for four hours total in an eight-hour workday with normal breaks; he cannot climb ladders, ropes, or scaffolds, and can only occasionally perform all other postural activities; he is limited to occasional overhead reaching with the left upper extremity; he is limited to frequent fingering and occasional feeling; he is limited to handling no more than fifty percent of the workday; he requires ready access to a restroom throughout the workday; he can have only occasional exposure to extreme cold or heat, vibration, or pulmonary irritants; and he can have no exposure to hazards, such as unprotected heights or moving mechanical parts.

Tr. 62.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 70. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, electronics worker, or mail

clerk. Tr. 71. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from March 31, 2014, through October 18, 2016, the date of the ALJ's decision. Tr. 72.

On December 13, 2017, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly found depression was not a severe impairment at step two; and

4. Whether the ALJ properly found at step five that Plaintiff was capable of performing other work in the national economy.

ECF No. 15 at 11.

# DISCUSSION

## A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his subjective symptom claims. ECF No. 15 at 15-16. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[2]  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he

_____

[2] At the time of the ALJ's decision in October 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p.  Neither party argued any error in this regard.

need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529, 416.929 (2011).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 63.

### 1. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom complaints were not supported by the objective medical evidence.  Tr. 63-65.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011).

Here, the ALJ considered Plaintiff's individual symptom complaints and noted where the medical evidence failed to corroborate Plaintiff's symptom complaints. Tr. 63-65; *see, e.g.,* Tr. 1219 (normal gait); Tr. 1251 (full range of motion in extremities and spine; full strength); Tr. 1265 (mildly decreased range of motion in back); Tr. 1276 (full range of motion in knees); Tr. 1282 (mildly reduced range of motion in back); Tr. 1422 (mildly decreased range of motion in shoulder). Plaintiff failed to challenge the ALJ's findings, thus, challenge to those findings is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Plaintiff's only assignment of error to the ALJ's evaluation of Plaintiff's symptom testimony is to argue that the ALJ failed to discuss Plaintiff's allegations of nausea and to cite medical evidence[3] to support Plaintiff's claims. ECF No. 15

_____

[3] The Court notes that a substantial portion of the evidence Plaintiff cites is evidence that the Appeals Council declined to consider and exhibit. Tr. 2. Where the Appeals Council refuses to consider additional evidence, the evidence is not

at 16.  Even if Plaintiff were to establish error here, such error would be harmless because the ALJ provided other legally sufficient reasons, discussed *infra*, to discount Plaintiff's symptom claims.  *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").  Additionally, the ALJ did address Plaintiff's nausea symptoms by incorporating a limitation into the RFC that required Plaintiff to have ready access to a restroom

_____

made part of the evidence contained in the administrative record that is subject to this Court's substantial evidence review.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see Ruth v. Berryhill*, No. 1:16-CV-0872-PK, 2017 WL 4855400, at *8-*11 (D. Or. Oct. 26, 2017) (citing other district court decisions in the Ninth Circuit holding that that new evidence that the Appeals Council looked at and then rejected did not become part of the administrative record subject to the Court's substantial evidence review).  Plaintiff did not challenge the Appeals Council's rejection of the evidence.  ECF No. 15 at 11-20.

throughout the workday. Tr. 62. Plaintiff has not established harmful error in the

ALJ's evaluation of Plaintiff's symptom testimony.

### 2. *Improvement with Treatment*

The ALJ found Plaintiff's symptom complaints were inconsistent with

Plaintiff's record of improvement with treatment. Tr. 63-64. The effectiveness of

treatment is a relevant factor in determining the severity of a claimant's symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec.

Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions

effectively controlled with medication are not disabling for purposes of

determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing

that a favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations). Here, the ALJ noted that several of

Plaintiff's impairments showed improvement with treatment. Tr. 63-64; *see, e.g.,*

Tr. 1263 (Plaintiff reported past relief from physical therapy); Tr. 1284 (Plaintiff

reported some present improvement in left shoulder pain with physical therapy);

Tr. 1311 (range of motion and grip strength improved after carpal tunnel release

surgery). Plaintiff failed to challenge this finding and thus has not demonstrated

that the ALJ erred. ECF No. 15 at 15-16; *see Carmickle*, 533 F.3d at 1161 n.2;

*Kim*, 154 F.3d at 1000. The ALJ reasonably concluded that Plaintiff's record of

improvement was inconsistent with the level of impairment he alleged.

ORDER - 14

### 3. Failure to Follow Treatment Recommendations

The ALJ found Plaintiff's symptom complaints were inconsistent with his failure to follow treatment recommendations. Tr. 64. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Here, the ALJ noted that Plaintiff declined to wear the wrist braces his physician recommended for carpal tunnel syndrome. Tr. 64; *see* Tr. 1268, 1273. Plaintiff failed to challenge this finding and thus has not demonstrated that the ALJ erred. ECF No. 15 at 15-16; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. The ALJ reasonably concluded that Plaintiff's failure to comply with recommended treatment was inconsistent with his symptom testimony.

### 4. Inconsistent Statements

The ALJ found Plaintiff's symptom reporting was undermined by his inconsistent statements in the record. Tr. 65. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements

concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59. Additionally, it is well-settled in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959.

Here, the ALJ observed several instances where Plaintiff's statements were inconsistent. For example, the ALJ noted Plaintiff inconsistently reported his marijuana use. Tr. 65; *see* Tr. 1244 (Plaintiff reported he had tried marijuana in the past); Tr. 1233 (Plaintiff reported self-medicating with marijuana); Tr. 1236 (Plaintiff reported smoking marijuana in the past); Tr. 1250 (Plaintiff reported occasional marijuana use); Tr. 1299 (Plaintiff reported weekly marijuana use); Tr. 1306-07 (same); Tr. 1368 (Plaintiff reported he has smoked a little marijuana and his last use was six months ago). The ALJ also noted that Plaintiff gave inconsistent explanations for why he left his last job. Tr. 65; *compare* Tr. 1233 (Plaintiff reported he "voluntarily terminated his employment because he felt his employer was not being honest with him") *with* Tr. 1165 (Plaintiff reported to the SSA that he stopped working because of his conditions). Plaintiff failed to challenge these findings and thus has not demonstrated that the ALJ erred. ECF No. 15 at 15-16; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. The ALJ reasonably concluded that Plaintiff's inconsistent statements undermined his overall symptom testimony.

*5. Symptom Exaggeration*

The ALJ found Plaintiff's symptom reporting was undermined by evidence in the record that Plaintiff exaggerated his symptoms. Tr. 65. The tendency to exaggerate provided a permissible reason for discounting Plaintiff's reported symptoms. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.). Here, the ALJ identified a treatment note where Plaintiff's Owestry score placed him in a category where Plaintiff was either bed-bound or exaggerating his symptoms. Tr. 65; *see* Tr. 1399. In light of Plaintiff's robust daily activities, discussed *infra*, the ALJ reasonably relied on this evidence to conclude Plaintiff had exaggerated his symptoms. Tr. 65. Additionally, the ALJ noted that although Plaintiff reported that his orthopedist wanted to perform neck surgery prior to Plaintiff's carpal tunnel release surgery, Tr. 1001, Plaintiff's treatment records did not corroborate this report. Tr. 65; *see* Tr. 1403 ("At some point the patient could become a candidate for surgical intervention for the neck but I think that it would be reasonable for the patient to have physical therapy."). Plaintiff failed to challenge these findings and thus has not demonstrated that the ALJ erred. ECF No. 15 at 15-16; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154

F.3d at 1000. The ALJ reasonably concluded that Plaintiff's exaggerated statements undermined his overall symptom testimony.

### 6. *Daily Activities*

The ALJ found Plaintiff's symptom reporting was inconsistent with the evidence of Plaintiff's daily activities. Tr. 65. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ found that Plaintiff's alleged limitations were inconsistent with Plaintiff's daily activities, which included personal care, performing housework and yardwork, caring for his grandchildren, building and repairing fences, performing household repairs, gardening, and riding a motorbike. Tr. 65; *see* Tr. 993-95, 1192-97. Plaintiff failed to challenge these findings and thus has not demonstrated that the ALJ erred. ECF No. 15 at 15-16; *see Carmickle*, 533 F.3d at

1161 n.2; *Kim*, 154 F.3d at 1000.  The ALJ reasonably concluded that Plaintiff's

alleged limitations were inconsistent with his daily activities.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Miguel

Schmitz, M.D., Kayleen Islam-Zwart, Ph.D., Patricia Benn, LMHC, and Debra

Harris, M. Ed., LMHC.  ECF No. 15 at 16-19.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. Dr. Schmitz

Dr. Schmitz, Plaintiff's treating orthopedic surgeon, opined on an unspecified date that Plaintiff was capable of lifting less than ten pounds on an occasional or frequent basis, that Plaintiff was capable of standing or walking for four hours in an eight hour workday, that Plaintiff was capable of sitting for six hours in an eight hour workday, that Plaintiff was capable of sitting for 20 minutes before changing position, that Plaintiff was capable of standing and walking for ten minutes before changing position, that Plaintiff needed the opportunity to shift at will from sitting or standing/walking, that Plaintiff had no manipulative limitations in the upper extremities, that Plaintiff would be off task for 16-25% of the workday, that Plaintiff needed to lie down at unpredictable intervals during an eight hour workday, that Plaintiff could occasionally twist and stoop, that Plaintiff

could never crouch or climb stairs or ladders, that Plaintiff could perform sedentary and less than sedentary work, and that Plaintiff's impairments would cause him to miss three days of work per month. Tr. 1470-72. The ALJ gave this opinion little weight. Tr. 68. Because Dr. Schmitz's opinion was contradicted by Dr. Panek, Tr. 981-83, the ALJ was required to provide specific and legitimate reasons to reject Dr. Schmitz's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Schmitz's opinion was inconsistent with the longitudinal evidence, including Dr. Panek's hearing testimony. Tr. 67. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Additionally, an ALJ may credit the opinion of nonexamining expert who testifies at hearing and is subject to cross-examination. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989)

ORDER - 21

(reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Here, the ALJ found Dr. Schmitz's opinion was inconsistent with the longitudinal record. Tr. 67. The ALJ found that the longitudinal evidence showed "[Plaintiff's] body has worn down to the point that he can no longer do [heavy labor]," but that the medical evidence did not support a finding of complete disability. Tr. 63-65; *see, e.g.,* Tr. 1219 (normal gait); Tr. 1251 (full range of motion in extremities and spine; full strength); Tr. 1265 (mildly decreased range of motion in back); Tr. 1276 (full range of motion in knees); Tr. 1282 (mildly reduced range of motion in back); Tr. 1422 (mildly decreased range of motion in shoulder). Additionally, the ALJ reasonably relied on the opinion of Dr. Panek, a reviewing expert who testified at the hearing and was subject to cross-examination. Tr. 66-67; *see* Tr. 972-85. Although Plaintiff challenges the ALJ's evaluation of Dr.

Schimtz's opinion, Plaintiff identifies no evidence to undermine the ALJ's finding.[4]  ECF No. 15 at 17-18.  The ALJ reasonably concluded that Dr. Schmitz's opinion was inconsistent with the longitudinal record, including Dr. Panek's testimony.

Second, the ALJ found Dr. Schmitz's opinion was unsupported.  Tr. 67.  The Social Security regulations "give more weight to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray*, 554 at 1228. Here, the ALJ noted that Dr. Schmitz's opinion did not indicate what medical findings supported his opinion.  Tr. 67; *see* Tr. 1470-72.  Additionally, the ALJ noted that Dr. Schmitz's opinion was not supported by his own treatment records.

_____

[4] Plaintiff argues that the ALJ had a duty to recontact Dr. Schmitz under SSR 96-5p.  ECF No. 15 at 17.  SSR 96-5p pertains to the ALJ's obligation to recontact a treating source "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record."  SSR 96-5p, 1996 WL 374183, at *6. Because Dr. Schmitz did not render an opinion on an issue reserved to the Commissioner, Tr. 1470-72, SSR 96-5p does not apply.

Tr. 67; *see, e.g.,* Tr. 1403 (observing mild stenosis and recommending physical

therapy); Tr. 1406-07 (physical examination showing full motor strength, normal

gait, and negative Waddell's); Tr. 1423 (physical examination showing same and

recommending physical therapy and epidural injection). Plaintiff failed to

challenge this finding and thus has not demonstrated that the ALJ erred. ECF No.

15 at 17-18; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. The ALJ

reasonably concluded that Dr. Schmitz's opinion was entitled to less weight

because it was not supported.

Third, the ALJ found Dr. Schmitz's opinion was entitled to less weight

because Dr. Schmitz did not review collateral treatment records before offering his

opinion. Tr. 67-68. The extent to which a medical source is "familiar with the

other information in [the claimant's] case record" is relevant in assessing the

weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6),

416.927(c)(6) (2012). Here, the ALJ noted that Dr. Schmitz's opinion does not

indicate that he reviewed any collateral treatment notes before rendering his

opinion. Tr. 67-68; *see* Tr. 1470-72. In contrast, the ALJ relied on the opinion of

Dr. Panek, who reviewed the record in its entirety at the time of the hearing. Tr.

66; *see* Tr. 972. Plaintiff failed to challenge this finding and thus has not

demonstrated that the ALJ erred. ECF No. 15 at 17-18; *see Carmickle*, 533 F.3d at

1161 n.2; *Kim*, 154 F.3d at 1000. The ALJ reasonably concluded that Dr.

ORDER - 24

Schmitz's opinion was entitled to less weight because he did not review other evidence in the record.

### 2. *Dr. Islam-Zwart*

Dr. Islam-Zwart evaluated Plaintiff on September 8, 2014, and opined Plaintiff had moderate impairments in his ability to understand, remember, and persist in tasks by following very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special stereovision; learn new tasks; adapt to changes in a routine work setting; make simple work-related decisions; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; that Plaintiff would have marked impairments in his ability to understand, remember, and persist in tasks by following detailed instructions; and complete a normal work day and work week without interruptions from psychologically based symptoms; and that Plaintiff's impairment would last for six months to indefinitely. Tr. 1365. The ALJ gave this opinion little weight. Tr. 69. Because Dr. Islam-Zwart's opinion was contradicted by Dr. Dowell, Tr. 1238-39, Dr. Eather, Tr. 1019, and Dr. Kraft, Tr. 1042, the ALJ was required to provide specific and legitimate reasons to reject Dr. Islam-Zwart's opinion. *Bayliss*, 427 F.3d at 1216.

Although Plaintiff challenges the ALJ's evaluation of Dr. Islam-Zwart's opinion, Plaintiff does not develop any argument at all as to how the ALJ erred. ECF No. 15 at 18-19. As such, the Court is not required to address this reason. *See Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008). The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[5]

Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Despite Plaintiff's failure to

_____

[5] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER - 26

brief the issue with specificity, the Court considered the ALJ's findings and concludes they are legally sufficient.

First, the ALJ found Dr. Islam-Zwart's opinion was internally inconsistent. Tr. 68. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data. *Tommasetti*, 533 F.3d at 1041. The ALJ noted Dr. Islam-Zwart's opinion that Plaintiff had significant limitations in his ability to learn and perform tasks was inconsistent with her opinion that Plaintiff could "minimize or eliminate" his barriers to employment through vocational training or services. Tr. 68; *see* Tr. 1365. Additionally, the ALJ found that Dr. Islam-Zwart's opinion that Plaintiff had marked cognitive limitations was inconsistent with her recommendation that Plaintiff did not need a protective payee. *Id.* Plaintiff failed to challenge this finding and thus has not demonstrated that the ALJ erred. ECF No. 15 at 18-19; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. The ALJ reasonably concluded that Dr. Islam-Zwart's opinion was internally inconsistent.

Second, the ALJ found Dr. Islam-Zwart's opinion was inconsistent with the longitudinal medical evidence, including evidence that Plaintiff's condition improved with treatment. Tr. 69. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at

1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ found Dr. Islam-Zwart's opined limitations were inconsistent with Plaintiff's treatment record, which showed inconsistent medication compliance and improvement with medication and counseling. Tr. 69; *see, e.g.,* Tr. 1254 (Plaintiff inconsistently taking Zoloft); Tr. 1257 (Xanax prescribed for use as needed); Tr. 1258 (Plaintiff has been off Zoloft for 1-2 weeks after Zoloft was increased at last visit); Tr. 1273 (mood improved with medication and counseling); Tr. 1278 (same); Tr. 1284 (same). The ALJ also noted that Plaintiff's performance on Dr. Islam-Zwart's mental status examination showed some improvement over his performance on the same examination administered by Dr. Dowell, who opined Plaintiff had no psychological limitations. Tr. 69; *compare* Tr. 1370 *with* Tr. 1238. Plaintiff failed to challenge these findings and thus has not demonstrated that the ALJ erred. ECF No. 15 at 18-19; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. The ALJ reasonably concluded Dr. Islam-Zwart's opinion was inconsistent with the longitudinal treatment record, including Plaintiff's record of improvement.

Third, the ALJ found Dr. Islam-Zwart's opinion was inconsistent with Plaintiff's daily activities. Tr. 69. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, the ALJ noted that

Plaintiff reported good activities of daily living to Dr. Islam-Zwart, including

independent self-care, household chores, cooking, grocery shopping, playing cards,

watching television, gardening, and spending time with his children and

grandchildren.  Tr. 1369.  Plaintiff failed to challenge this finding and thus has not

demonstrated that the ALJ erred.  ECF No. 15 at 18-19; *see Carmickle*, 533 F.3d at

1161 n.2; *Kim*, 154 F.3d at 1000.  The ALJ reasonably concluded that these daily

activities were inconsistent with the level of impairment Dr. Islam-Zwart opined.

### 3.  Ms. Benn and Ms. Harris

Ms. Benn counseled Plaintiff between February and April 2014, and opined

on June 18, 2014 that Plaintiff had difficulty controlling his anger, feeling

motivated, and managing his emotions, and that Plaintiff would have difficulty

maintaining a consistent work schedule and being a reliable, productive employee.

Tr. 1232-34.  Ms. Harris counseled Plaintiff between January and December 2015,

and opined on August 23, 2016 that Plaintiff was a physical safety risk due to his

lack of sense of danger or potential risk when engaging in activities and that

Plaintiff showed improvement when taking medications but would self-discontinue

his medication.  Tr. 1352-53.  The ALJ gave both opinions little weight.  Tr. 69-70.

As LMHCs, Ms. Benn and Ms. Harris are not acceptable medical sources.  20

C.F.R. §§ 404.1502, 416.902[6] (acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). An ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. §§ 404.1527(f), 416.927(f).[7] An ALJ must give reasons "germane" to each source in order to discount evidence from non-acceptable medical sources. *Ghanim*, 763 F.3d at 1161.

Plaintiff challenges the ALJ's evaluation of these opinions but fails to identify error in the ALJ's analysis. ECF No. 15 at 18-19. Plaintiff misconstrues the ALJ's findings to argue that the ALJ rejected the opinions of Ms. Benn and Ms. Harris because they are not medically acceptable sources. *Id.* To the contrary, the ALJ identified these sources as "other sources," and then proceeded to identify several germane reasons to reject each opinion. Tr. 69-70.

_____

[6] Prior to March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. §§ 404.1513, 416.913 (2013).

[7] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

ORDER - 30

First, the ALJ rejected both Ms. Benn's opinion and Ms. Harris' opinion because they were not supported. Tr. 69-70. Failure to provide support or explanation is a germane reason to discredit opinion of nonacceptable medical source. *Molina*, 674 F.3d at 1111-12. Here, the ALJ observed that although both Ms. Benn and Ms. Harris counseled Plaintiff for a period of time, neither source released any counseling treatment notes to support their opinions. Tr. 69. Additionally, the ALJ noted that Ms. Harris failed to explain the durational level of the impairments she opined. Tr. 70. Plaintiff failed to challenge these findings and thus has not demonstrated that the ALJ erred. ECF No. 15 at 18-19; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. Ms. Benn's and Ms. Harris' failure to provide support for their opinions was a germane reason to discredit both opinions.

Second, the ALJ rejected both Ms. Benn's opinion and Ms. Harris' opinion because they were inconsistent with the medical evidence. Tr. 69-70. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *Bayliss*, 427 F.3d at 1218. Here, the ALJ found that the severe limitations in both opinions were inconsistent with Plaintiff's longitudinal treatment record, which showed minimal mental health problems and improvement with treatment. Tr. 69-70; *see, e.g.,* Tr. 1273 (mood improved with medication and counseling); Tr. 1278 (same); Tr. 1284 (same). The ALJ specifically noted that the

assessed limitations were inconsistent with Dr. Dowell's examination, who is an acceptable medical source, which examination found no psychological limitations. Tr. 69. Plaintiff failed to challenge this finding and thus has not demonstrated that the ALJ erred. ECF No. 15 at 18-19; *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. The inconsistencies between the medical evidence and Ms. Benn's and Ms. Harris' opinions provide germane reason to discredit both opinions.

**C. Step Two**

Plaintiff challenges the ALJ's failure to identify depression as a severe impairment at step two. ECF No. 15 at 13-15.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) (2012). When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment." 20 C.F.R. §§ 404.1520a, 416.920a (2011). Second, the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence

or pace; and episodes of decompensation. *Id.* Functional limitation is measured as "none, mild, moderate, marked, and extreme." *Id.* If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe. *Id.* If the impairment is severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. *Id.*

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff asserts the ALJ should have identified depression as a severe impairment at step two. ECF No. 15 at 13-14. However, Plaintiff's argument is based entirely on the assumption that the ALJ should have credited the opinions of Dr. Islam-Zwart, Ms. Benn, and Ms. Harris. *Id.* As discussed *supra*, Plaintiff failed to develop any argument to support Plaintiff's assertion that the ALJ erred in evaluating the mental impairment opinion evidence. *Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. Therefore, Plaintiff does not establish subsequent error in the ALJ's step two analysis. The ALJ reasonably relied on the opinions of

Dr. Dowell, Dr. Eather, and Dr. Kraft to conclude depression was not a severe impairment.  Tr. 59-60, 68.

**D. Step Five**

Plaintiff challenges the ALJ's step five analysis for being based on an RFC Plaintiff argues fails to incorporate all of Plaintiff's limitations.  ECF No. 15 at 19-20.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.*  For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom testimony and the medical opinion evidence is legally sufficient.  Thus, the vocational expert's testimony was not based on an incomplete hypothetical, and the ALJ did not err in determining Plaintiff was capable of performing other work in the national economy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

ORDER - 34

1    The District Court Executive is directed to file this Order, provide copies to
2 counsel, and **CLOSE THE FILE.**

3        DATED February 6, 2019.

4                            *s/Mary K. Dimke*
                          MARY K. DIMKE
5                  UNITED STATES MAGISTRATE JUDGE

ORDER - 35